# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **PLASTICS MACHINERY GROUP, INC.,** <br> 5455 PERKINS ROAD <br> BEDFORD HEIGHTS, OHIO 44146 <br><br> Plaintiff, <br><br> -vs- <br><br> **THERMOFORMING PROCESS PRODUCTS, INC.** <br> 505 BLUE BALL ROAD, BUILDING 140C <br> ELKTON, MARYLAND 21921 <br><br> **SERVE ALSO** <br><br> C/O REGISTERED AGENT <br> **ANTHONY LUCIANO** <br> 210 NORTH FIELDCREST DRIVE <br> NORTH EAST, MARYLAND 21901 <br><br> **-and-** <br><br> **JAMES B. GRIFFIN** <br> 398 MARTINS CORNER ROAD <br> COATESVILLE, PENNSYLVANIA, 19320-1068, <br><br> Defendants. | CASE NO: <br><br> JUDGE: <br><br><br><br> **COMPLAINT** |

## PLAINTIFF PLASTICS MACHINERY GROUP, INC.'S
## COMPLAINT FOR MONEY DAMAGES

Plaintiff Plastics Machinery Group, Inc. ("*Plaintiff*" or "*PMG*"), by and through counsel, for its Complaint against Thermoforming Process Products, Inc. ("*TPP*") and James

B. Griffin ("*Griffin*" with TPP, the "*Defendants,*" and Defendants with PMG, the "*Parties*") states as follows:

## INTRODUCTION

1. In the Winter of 2022, TPP asked PMG to facilitate a potential sale of TPP. As a result, PMG and TPP entered into a December 1, 2022 finder agreement (the "*Finder Agreement*"). A copy of the Finder Agreement is attached as **Exhibit A.**

2. Under the Finder Agreement, PMG was to find and identify prospective purchasers or transaction partners for TPP (each a "*Target*" and collectively, "*Targets*") in exchange for at least $200,000.00 (the "*Finder's Fee*"). *See* Exh. A at Section 4.

3. Since TPP entered into the Finder Agreement, PMG worked diligently to find and provide two offers at or above the asking price of TPP. TPP's President and Owner, Tony Luciano ("*Luciano*"), verbally accepted one offer, but Luciano reneged his verbal acceptance one day later and left PMG in the dark.

4. Around this same time, Defendant Griffin became involved and began interfering with prospective transactions between TPP and Targets as well as TPP and PMG's Finder Agreement.

5. As a result, PMG initiates this action against TPP and Griffin for breach of the Finder Agreement, promissory estoppel, tortious interference, and civil conspiracy.

## PARTIES, JURISDICTION, AND VENUE

6. PMG is an Ohio corporation organized under the laws of the State of Ohio with its principal place of business at 5455 Perkins Rd. in Bedford Heights, Ohio 44146.

7. TPP is a Maryland corporation organized under the laws of the State of Maryland with its principal place of business at 505 Blue Ball Road, Building 140C in Elkton, Maryland 21921.

8. Griffin is an individual residing in the state of Pennsylvania at 398 Martin Corner Rd. in Coatesville, Pennsylvania 19320-1068.

9. Pursuant to 28 U.S.C. § 1332(a)(1), This Court has subject matter jurisdiction over this litigation because the amount in controversy exceeds $75,000 and PMG, TPP, and Griffin are all citizens of different states within the meaning of 28 U.S.C. § 1332(c)(1).

10. This Court has personal jurisdiction over all Defendants.

11. This Court has personal jurisdiction over TPP because TPP expressly agreed to the personal jurisdiction of Ohio federal courts through the Finder Agreement's Section 13.

12. This Court also has personal jurisdiction over TPP consistent with the United States Constitution and laws and Ohio's long-arm statute because TPP purposefully availed itself to the benefits and protections of the laws that govern this forum by, *inter alia*: (i) engaging and contracting with PMG, an Ohio business to perform services within Ohio; and (ii) causing tortious injury to PMG in Ohio by acts or omissions outside of the State of Ohio committed with the purpose of injuring PMG.

13. This Court also has personal jurisdiction over Griffin consistent with the United States Constitution and laws and Ohio's long-arm statute because Griffin purposely availed himself to the benefits and protections of the laws that govern this forum by, *inter alia*: (i) interfering with an Ohio contract between PMG, an Ohio business, and TPP; (ii)

causing tortious injury to PMG in Ohio by acts or omissions outside the State of Ohio committed with the purpose of injuring PMG.

14. Venue is proper pursuant to at least 28 U.S.C. § 1391(b)(3) because all Defendants are subject to personal jurisdiction in this District through their association with PMG, a business operating in Ohio

15. Venue is also proper pursuant to the Finder Agreement's Section 13. *See* Exh. A at Section 13.

## FACTS
### TPP Engages PMG as a Finder for the Sale of TPP

16. PMG is a leader in selling plastics processing equipment with expertise, contacts, and relationships in TPP's industry and business.

17. TPP is a packaging company in the medical device, electronic, personal care, and consumer markets.

18. In the Winter of 2022, Luciano, TPP's President, asked PMG to find a purchaser for TPP.

19. PMG and TPP executed the Finder Agreement on December 1, 2022.

20. With the Finder Agreement, TPP made PMG its exclusive representative to find a Target for a one-year period (the "*Term*"). *See* Exh. A at Sections 1 and 2.

21. PMG was to identify Targets in writing and provide information to TPP. *See* Exh. A at Section 3.

22. In exchange, TPP agreed to pay PMG if any transaction was consummated.

23. Specifically, TPP was to pay PMG as follows:

- Ten Percent (10%) on First Million ($1MM) of Transaction Value, plus

- Eight Percent (8%) of Second Million ($2MM) in Transaction Value, plus

- Six Percent (6%) of Third Million ($3MM) in Transaction Value, plus

- Four Percent (4%) of any Transaction Value in excess of $3 Million, and

- *In no event shall the Finder's Fee be less than $200,000.00*.

Exh. A at Section 4 (emphasis added).

24. TPP further agreed to provide PMG with "all information concerning [TPP] which [PMG] reasonably deems appropriate in connection with its engagement and will provide [PMG] with access to [TPP's] officers, managers, directors, and advisors." Exh. A at Section 9.

25. Additionally, the Finder Agreement contained a tail provision that would pay PMG the Finder's Fee if TPP consummated a transaction with any Target within twelve (12) months of the expiration of the Term (the "***Tail Period***"). *See* Exh. A at Section 5.

### Representations Made by Luciano

26. Based upon representations by Luciano, PMG understood that Luciano was contemplating retirement and seeking to sell TPP to further fund his retirement.

27. PMG understood that the target price for Luciano to sell TPP was $3,500,000, and PMG sought out Targets that were willing to pay $3,500,000 or more to purchase TPP.

## **PMG Finds and Conveys the First Offer to TPP**

28. On March 20, 2023, PMG provided Luciano and TPP with an offer from a Target (the "***First Target***") that had a potential payout of $4,306,485.06 over a five-year period.

29. The First Target, TPP, and PMG renegotiated the initial offer over the following months.

30. On May 17, 2023, PMG and the First Target proposed a revised offer of a $3,000,000 purchase price, with a $1,500,000 cash payment at closing, with an additional offer by PMG to purchase TPP's machinery and equipment for $500,000 (the "***Revised Offer***").

31. The Revised Offer with the First Target and PMG met Luciano's target price of $3,500,000.

32. On May 19, 2023, Luciano verbally accepted the Revised Offer during a call with PMG's President and CEO, Donald Kruschke, and its Director of Business Services, Darrin Kert ("***Kert***").

33. However, during the following weekend, Luciano reneged on his verbal acceptance.

34. Despite the confusion and deception of Luciano and TPP, PMG remained determined to find a suitable purchaser for TPP.

## **Griffin Intentionally Interferes With Any Potential Deal That PMG Finds**

35. Upon information and belief, Griffen was working with TPP in May 2023 behind the scenes and caused Luciano to renege his verbal acceptance of the Revised Offer.

6

36. On June 16, 2023, Luciano formally introduced Griffin to Kert via email. *See* June 2023 Correspondence, attached as **Exhibit B**.

37. On June 19, 2023, Griffin stated that he was advising Luciano on tax, accounting, and legal issues, despite the Finder Agreement's provision making PMG the exclusive representative of TPP for a sale or transaction. *See id.*

38. Since inserting himself into the relationship between PMG and TPP, Griffin has not acted as an advisor but rather as an impediment to any deal for TPP.

39. For example, Griffin redirected all of Kert's email requests for information to himself and refused PMG access to Luciano, despite Section 9 of the Finder Agreement that obligated TPP to "provide [PMG] with access to [TPP]'s officers, managers, directors and advisors."

40. PMG understands that Griffin intentionally interfered with the Revised Offer and Luciano's verbal acceptance by, *inter alia*, causing Luciano to renege on the Revised Offer, delaying or refusing to provide financial information and access to TPP and Luciano, ignoring emails, and not coordinating a time for the First Target to tour TPP, all in violation of the Finder Agreement.

41. Upon information and belief, Griffin intentionally interfered with the prospective purchase so that TPP and/or Griffin could receive additional funds by avoiding payment of the Finder's Fee for a sale or transaction at a later date beyond the Term and Tail Period.

**Griffin Tanks the Second Potential Purchase of TPP**

42. In late 2023, PMG again found a potential purchaser for TPP (the "*Second Target*").

43. On November 8, 2023, an on-site meeting was held to introduce the Second Target to Luciano and TPP.

44. Griffin was present at the November 8, 2023 meeting.

45. On November 21, 2023, the Second Target presented a formal letter of intent to Luciano and TPP (the "*First LOI*").

46. On November 30, 2023, as the Term neared expiration, Griffin requested a Microsoft Word version of the First LOI so as to provide a counteroffer.

47. However, Griffin never provided a counteroffer or attempted to negotiate the First LOI and instead stalled.

48. Yet, the Second Target generated a second offer to purchase TPP in response to PMG's continued negotiations.

49. The second offer was for $3,500,000 and a second letter of intent (the "*Second LOI*") was generated and sent to TPP for acceptance.

50. And again, Griffin stalled the Second LOI and did not provide a counteroffer, effectively terminating the potential transaction.

51. Due to Griffin's continued interference, TPP has not been sold, and upon information and belief, PMG understands that TPP, on Griffin's advice, will not be sold until the Term and Tail Period expires.

8

## <u>Claim I</u>
**(Breach of Contract – Finder Agreement)**
**Against TPP**

52. Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully rewritten herein.

53. PMG and TPP entered into a legal binding contract, the Finder Agreement.

54. The Finder Agreement was supported by consideration.

55. The Finder Agreement required PMG to find a buyer or transaction partner for TPP.

56. PMG fulfilled all of its obligations under the Finder Agreement.

57. Despite PMG's fulfillment, TPP has failed to fulfill its obligations under the Finder Agreement and is without legal excuse for doing so.

58. TPP has materially breached its obligations under the Finder Agreement by, *inter alia*, not providing PMG with exclusivity to act on behalf of TPP in a potential sale or transaction in violation of Section 2 of the Finder Agreement, refusing access to TPP's officers in violation of Section 9 of the Finder Agreement, and failing to cooperate and provide information concerning TPP that is reasonably appropriate for PMG also in violation of Section 9 of the Finder Agreement.

59. TPP has no legal excuse for failing to perform its obligations under the Finder Agreement.

60. As a direct and proximate result of TPP's failures to perform under the Finder Agreement, PMG has been harmed in an amount exceeding $75,000 and to ultimately be determined at trial.

### Claim II
**(Breach of Contract – Breach of the Covenant of Good Faith and Fair Dealing) Against TPP**

61. Plaintiff re-alleges and incorporates each and every preceding paragraph as if fully rewritten herein.

62. PMG fully performed under the Finder Agreement by finding two Targets who each presented offers to purchase TPP and its assets at or above Luciano's target price of $3,500,000.

63. Inherent in every agreement is each party's obligation to act in good faith and deal fairly with one another.

64. Among other things, by refusing to sell to either the First Target or Second Target through the Revised Offer, First LOI, or Second LOI, TPP breached the covenant of good faith and fair dealing inherent in every contract.

65. Further, TPP refused to cooperate with PMG and refused to provide information and access to TPP's officers.

66. The effect of TPP's actions was to delay a purchase and impede or prohibit PMG from collecting upon its Finder's Fee within the Term.

67. TPP's actions were taken in bad-faith and ill will toward PMG and were not within the common purpose and consistency of the expectations of PMG when TPP and PMG entered into the Finder Agreement.

68. As a direct and proximate result of TPP's failures to perform and display of bad faith and ill will toward PMG in connection with the Finder Agreement, PMG has been harmed in an amount exceeding $75,000 and to ultimately be determined at trial.

## CLAIM III
**(Promissory Estoppel)
Against TPP**

69. Plaintiff re-alleges and incorporates each and every preceding paragraph as if fully rewritten herein.

70. As a condition precedent to the Finder Agreement, Luciano, on behalf of TPP, clearly and unambiguously agreed to pay a Finder's Fee in no less than $200,000 in exchange for a buyer of TPP at the price of $3,500,000.

71. PMG reasonably and foreseeably relied on TPP's promise as evidenced by, *inter alia*, finding two Targets willing to pay $3,500,000 or more for TPP.

72. TPP never fulfilled his promise to pay PMG at least $200,000 for finding potential buyers at a price of $3,500,000 or more.

73. Additionally, TPP, through Luciano, promised to sell TPP's used equipment to PMG for $500,000 as part of the Revised Offer.

74. Indeed, Luciano, TPP's President, verbally accepted the Revised Offer.

75. PMG reasonably and foreseeably relied on TPP's promise.

11

76. However, TPP never fulfilled its promise to sell its used equipment to PMG.

77. As a result, an injustice has occurred and further injustice can only be avoided by enforcing TPP's promise to sell its equipment to PMG.

78. PMG has also been harmed and will continue to be harmed by TPP's failure to fulfill its promises in an amount exceeding $75,000 and to ultimately be determined at trial.

## CLAIM IV
### (Tortious Interference with a Business Relationship)
### Against Griffin

79. Plaintiff re-alleges and incorporates each and every preceding paragraph as if fully rewritten herein.

80. A business relationship existed between PMG and TPP as evidenced by the Finder Agreement.

81. Griffin was aware of the business relationship and Finder Agreement between PMG and TPP.

82. Griffin intentionally interfered with the Finder Agreement by, *inter alia*, refusing access to TPP's documents, information, and officers, namely Luciano.

83. Upon information and belief, Griffin further intentionally interfered with the Finder Agreement by, *inter alia*¸ advising Luciano not to sell TPP to the First or Second Targets for the Revised Offer, First LOI, or Second LOI.

84. Griffin also caused TPP to breach the Finder Agreement and the Revised Offer, resulting in the expiration of the Term without a sale of TPP.

85. As a direct and proximate result of Griffin's interference with the business relationship between PMG and TPP, PMG has been damaged in an amount in excess of $75,000 and ultimately to be determined at trial.

### CLAIM V
### (Civil Conspiracy)
### Against TPP and Griffin

86. Plaintiff re-alleges and incorporates each and every preceding paragraph as if fully rewritten herein.

87. A malicious combination existed between TPP and Griffin.

88. Upon information and belief, Griffin advised TPP to breach the Finder Agreement in order to avoid a Finder's Fee.

89. TPP and Griffin unlawfully conspired to breach the Finder Agreement by, *inter alia*, violating PMG's rights as TPP's exclusive representative, delaying the production of relevant information related to TPP, refusing access to TPP's President, Luciano, and not paying a Finder's Fee.

90. The actions taken by TPP and Griffin exist independent from the actual conspiracy because Defendants conspired to breach the Finder Agreement.

91. As a direct and proximate result of Defendant conspiracy, PMG has been damaged in an amount in excess of $75,000 and ultimately to be determined at trial.

**WHEREFORE**, Plaintiff seeks judgment against Defendants TPP and Griffin as follows:

1. As to Claim I of the Complaint, judgment against Defendant TPP for breach of contract related to the terms of the Finder Agreement, in an amount in excess of $75,000 and to ultimately be determined at trial;

2. As to Claim II of the Complaint, judgment against Defendant TPP for breach of contract related to the duty of good faith and fair dealing implied in the Finder Agreement, in an amount in excess of $75,000 and to ultimately be determined at trial;

3. As to Claim III of the Complaint, judgment against Defendant TPP for expenses related to PMG's finding and providing purchasers at the agreed upon price as well as the sale of TPP's equipment as agreed upon, all in excess of $75,000 and to ultimately be determined at trial;

4. As to Claim IV of the Complaint, judgment against Defendant Griffin for tortiously interfering with PMG and TPP's business relationship and preventing PMG from recovering a Finder's Fee, in an amount in excess of $75,000 and to ultimately be determined at trial;

5. As to Claim V of the Complaint, judgment against Defendants Griffin and TPP for conspiracy to unlawfully and without excuse breach the Finder Agreement, in an amount in excess of $75,000 and to ultimately be determined at trial; and

6. All other relief as this Court deems just and proper.

4871-9209-9745, v. 1

                Respectfully submitted,

                **KOHRMAN JACKSON & KRANTZ LLP**

                */s/ Jon J. Pinney*
                JON J. PINNEY (0072761)
                ALEX E. JONES (0095807)
                KYLE D. STROUP (0099118)
                One Cleveland Center, 29th Floor
                1375 East Ninth Street
                Cleveland, Ohio 44114-1793
                Phone: (216) 696-8700
                Fax: (216) 621-6536
                Email: jjp@kjk.com; aej@kjk.com;
                kds@kjk.com

                *Counsel for Plaintiff Plastics Machinery Group, Inc.*

## **JURY DEMAND**

Pursuant to Fed R. Civ. P. 38, Plaintiff Plastics Machinery Group, Inc. hereby requests a trial by jury on all triable issues.

                */s/ Jon J. Pinney*
                Jon J. Pinney