UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PLASTICS MACHINERY GROUP, INC., | ) | Case No.: 1:24 CV 185 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| THERMOFORMING PROCESS, PRODUCTS, INC., *et al.,* | ) | |
| | ) | |
| Defendants | ) | ORDER |

Currently pending before the court in the above-captioned case is Defendant Thermoforming

Process Products, Inc.'s ("TPP") Motion for Judgment on the Pleadings (ECF No. 19). For the

following reasons the court grants TPP's Motion.

## I. BACKGROUND

### A.      Factual Background

This case arises from an agreement between Plaintiff Plastics Machinery Group, Inc.

("Plaintiff or "PMG") and Defendant TPP. Plaintiff is an Ohio corporation that sells plastics

processing equipment and maintains expertise, contacts, and relationships with people and entities

in the industry Defendant TPP operates. (Compl. ¶¶ 6, 16, 17, ECF No. 1.) Defendant TPP is a

Maryland corporation providing packaging services in the medical device, electronic, personal care,

and consumer markets. (*Id.* ¶¶ 7, 17.) Defendant James Griffin ("Griffin") is an advisor to TPP's

President and Owner, Tony Luciano ("Luciano"). (*Id.* ¶¶ 3, 37.)

On December 1, 2022, Plaintiff and TPP entered into a Finder Agreement ("Agreement")

whereby Plaintiff would identify prospective buyers or transaction partners for TPP in exchange for

a "Finder's Fee" of at least $200,000. (*Id.* ¶¶ 1–2; *see also* Exh. A at PageID 16, ECF No. 1-1.)

According to Plaintiff, the parties executed the Agreement because Luciano was planning to retire

and wanted to sell TPP to support his retirement. (*Id.* ¶ 26.)

On March  20, 2023, PMG presented an offer from a Target ("First Target") to Luciano and

TPP that had a potential payout of $4,306,485.06 over a five-year period. (*Id.* ¶ 28.) TPP, PMG, and

the First Target negotiated the initial offer, and, on May 17, 2023, the First Target made a revised

offer consisting of a $3,000,000 purchase price, with a $1,500,000 cash payment at closing, and an

offer from PMG to buy TPP's machinery and equipment for $500,000. (*Id.* ¶ 29–30.) Then, during

a call on May 19, 2023, between PMG and TPP, Luciano allegedly accepted the revised offer

verbally. (*Id.* ¶ 32.) However, the following weekend, Luciano allegedly revoked his verbal

acceptance. (*Id.* ¶ 33.)

According to Plaintiff, Griffin started working with Luciano and TPP in May 2023. (*Id.* ¶ 35.)

Griffin was formally introduced via email to Plaintiff's Director of Business Services, Darrin Kert

("Kert"), on June 16, 2023. (*Id.* ¶ 36; *see also* Exh. B at PageID 20–23.) Upon introduction, Griffin

explained to Kert that he was advising Luciano on tax, accounting, business, and legal issues, an

arrangement Plaintiff claims violates the Finder Agreement. (*Id.* ¶ 37.) Since Griffin's introduction,

Plaintiff alleges he has "not acted as an advisor but rather as an impediment to any deal for TPP."

(*Id.* ¶ 38.) Further, Plaintiff alleges that Griffin caused Luciano to revoke his verbal acceptance of

the Revised Offer presented in May 2023, and that Griffin has prevented PMG from accessing the information and people necessary to identify a Target buyer for TPP. (*Id.* ¶ 38–40.)

Plaintiff further alleges that Griffin's interference continued into PMG's presentation of a Second Target to TPP in November 2023. On November 8, 2023, Plaintiff held a meeting with Luciano, the Second Target, and Griffin. (*Id.* ¶ 43.) On November 21, 2023, the Second Target presented a Letter of Intent to Luciano and TPP, which Griffin allegedly requested a Word version of to provide a counteroffer on November 30, 2023. (*Id.* ¶ 45–46.) However, Plaintiff claims that Griffin never proposed a counteroffer, and when the Second Target presented a second Letter of Intent, Griffin allegedly "stalled" again. (*Id.* ¶ 47–50.) As a result of Griffin's alleged interference, Plaintiff claims that TPP was not sold, and "upon information and belief, PMG understands that TPP, on Griffin's advice, will not be sold until the Term and Tail Period expires." (*Id.* ¶ 51.)

**B.    Procedural Background**

Plaintiff filed its five-count Complaint (ECF No. 1) on January 30, 2024, alleging (I) Breach of Contract - Finder Agreement, (II) Breach of Contract - Breach of the Covenant of Good Faith and Fair Dealing, and (III) Promissory Estoppel against Defendant TPP, as well as (IV) Tortious Interference with a Business Relationship against Defendant Griffin, and (V) Civil Conspiracy against TPP and Griffin. (Compl. at PageID 9–13.) Defendants separately filed Answers to the Complaint on March 29, 2024, with TPP also filing a Counterclaim for Declaratory Judgment against Plaintiff, which Plaintiff Answered on April 19, 2024. (*See* ECF Nos. 7, 8, 14.)

On May 13, 2024, Defendant Griffin filed his Motion for Judgment on the Pleadings (ECF No. 18), and on May 14, 2024, Defendant TPP filed its Motion for Judgment on the Pleadings (ECF No. 19). On June 3, 2024, Defendants jointly moved to Stay Discovery (ECF No. 20) pending the

court's ruling on Defendants' respective motions for judgment on the pleadings. On June 14, 2024, Defendant Griffin also moved for a 30 day extension of time to respond to Plaintiff's first discovery request. (ECF No. 23.) Plaintiff filed its Opposition to Defendants' Motions for Judgment on the Pleadings and to Stay Discovery (ECF Nos. 21, 22, 24.) on June 12, 13, and 17, 2024, respectively. Defendants then filed their respective Replies (ECF Nos. 25, 26, 27.) on June 18, 26, and 27, 2024.

On August 13, 2024 Plaintiff filed a letter with the court requesting a conference to discuss the ongoing discovery disputes between the parties, specifically Defendants' Motion to Stay and 30 Day Extension. (ECF No. 29.) The court held a telephonic status conference with counsel for the parties on September 4, 2024, during which it granted Defendants' Motion to Stay Discovery for 45 days, or until the court rules on Defendants' Motions for Judgment on the Pleadings, whichever was earlier. (Order, ECF No. 30.) Because Defendants TPP and Griffin filed separate motions for judgment on the pleadings, the court addresses each in its own Order, starting with Defendant TPP's Motion. (ECF No. 19.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." The standard for evaluating a motion for judgment on the pleadings is identical to the standard a court applies to a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001); *Tinney v. Richland Cty.*, No. 1:14 CV 703, 2015 WL 542415, at *3 (N.D. Ohio Feb. 10, 2015). The court examines the pleadings of the parties and evaluates the legal sufficiency of the plaintiff's claim. *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993).

-4-

The United States Supreme Court clarified the law regarding what a plaintiff must plead in order to survive a motion made pursuant to Rule 12(b)(6) in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court, in *Iqbal*, further explained the "plausibility" requirement, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678. Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. LAW AND ANALYSIS

Defendant TPP moves for judgment on the pleadings as to Plaintiff's claims for Breach of Contract (Count I), Breach of the Covenant of Good Faith and Fair Dealing (Count II), Promissory

Estoppel (Count III), and Civil Conspiracy (Count V). (ECF No. 19.) The court addresses each Count in turn.

**A.      Count I - Breach of Contract (Finder Agreement)**

Defendant TPP argues that Plaintiff fails to plausibly allege facts that TPP breached the Finder Agreement. (Mot. at PageID 128.) Specifically, Defendant TPP asserts that PMG presents no allegations or factual statements that "would lend credibility to the notion that TPP used any other person, including Griffin, to provide the services contemplated by Section 2 of the Finder Agreement." (*Id.*) Additionally, Defendant TPP explains it complied with Section 9 of the Finder Agreement by "providing Plaintiff access to both Luciano and Griffin," the President of TPP and an Advisor to Luciano, respectively. (*Id.* at PageID 129.) Defendant TPP also contests Plaintiff's claim that it did not provide reasonably appropriate information to PMG in accordance with Section 9 because "Plaintiff's Complaint does not contain a single statement alleging TPP refused to cooperate or provide Plaintiff with requested information." (*Id.* at PageID 130.)

Plaintiff argues that the Finder Agreement does not contemplate the involvement of a third-party business advisor, such as Griffin, and that the court can draw a reasonable inference from its allegations that Griffin's involvement by TPP violates the exclusivity outlined in Section 2. (Opp'n at PageID 169–70.) Plaintiff also contests TPP's framing of what PMG must present at the pleading stage, stating repeatedly that its allegations meet Federal Rule of Civil Procedure Rule 8(a)'s pleading requirements, and that contrary to TPP's Motion, Plaintiff "need not present evidence at the pleadings stage." (*Id.*) Plaintiff further argues that the court should construe the term "exclusive

basis" as ambiguous, and that the plain meaning of the word "access"[1] applies as used in Section 9 of the Finders Agreement. (*Id.* at PageID 171.)

In its Reply Brief, Defendant TPP notes that the Complaint does not allege any ambiguity in the terms of the Finder Agreement, nor did Defendant raise the issue of ambiguity. (Reply at PageID 209.) Defendant also argues that Plaintiff's contention that an advisory role like Griffin's was not contemplated by the Agreement is misleading because Section 9 "expressly contemplates the involvement of such an advisor by requiring TPP to provide PMG access to TPP's 'officers, managers, directors, and **advisors**.'" (*Id.* at PageID 210 (emphasis in the original).) Lastly, TPP maintains that Plaintiff's allegations are conclusory and statements about TPP violating Section 9 of the agreement pertain to Griffin, not TPP. (*Id.* at PageID 210–11.)

Under Ohio law, to state a claim for breach of contract, a plaintiff must establish: (1) the existence of a valid contract between the parties; (2) performance by the plaintiff; (3) a breach by the defendant, and (4) resulting damages. *Bihn v. Fifth Third Mortgage Co.*, 980 F.Supp.2d 892, 906 (S.D. Ohio 2013) (citing *Pavlovich v. National City Bank*, 435 F.3d 560, 565 (6th Cir. 2006)). When interpreting a contract, the role of a court is to give effect to the intent of the parties. Therefore, "[w]hen the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 953 N.E.2d 285, 292 (Ohio 2011).

Here, Plaintiff sufficiently pleads that the Finder Agreement is a valid contract between it and TPP. (*See* Compl. ¶ 1, 19; Exh. A.) TPP does not dispute the existence of the Finder Agreement in

---

[1]    Plaintiff cites to Merriam Webster's definition of "access," which reads: "permission, liberty, or ability to enter, approach, or pass to and from a place or to approach or communicate with a person or thing." (Opp'n n. 1 at PageID 170.)

its Motion. Moreover, it admits in its Answer that PMG and TPP entered into the Finder Agreement on December 1, 2022, and TPP admits that Exhibit A attached to the Complaint is the Finder Agreement between the parties. (*See* Ans. ¶¶ 1, 19, ECF No. 8.) Plaintiff also sufficiently pleads facts demonstrating its performance under the Finder Agreement, specifically alleging it identified and presented to TPP two Targets. (*See* Compl. ¶¶ 28–31, 42–45.) TPP does not challenge these allegations in its Motion, and therefore the court concludes Plaintiff's Complaint satisfies the performance element of an Ohio breach of contract claim. What Defendant TPP does challenge in its Motion is Plaintiff's allegations that TPP breached the Finder Agreement.

The first breach allegation is that "TPP has materially breached its obligations under the Finder Agreement by [...] not providing PMG with exclusivity to act on behalf of TPP in a potential sale or transaction in violation of Section 2 of the Finder Agreement." (Compl. ¶ 58.) Sections 1 and 2 of the Finder Agreement describe the engagement between PMG and TPP and the services PMG will perform:

> 1. Engagement and Term. Company hereby engages and retains Finder on an exclusive basis and Finder hereby agrees to perform the services described herein for a period of one year (the "Term") unless terminated pursuant to Section 3 below or extended via a written extension executed by all of the parties hereto.

> 2. Services. The services to be performed by Finder shall consist of finding and identifying prospective purchasers or transaction partners (each, a "Target" and collectively, the "Targets"). Finder shall devote to Company only such time as Finder may deem necessary in order to identify such Targets. During the Term, Finder shall have **exclusive rights** to identify Targets, and the Company shall not retain any other third-party to provide services similar to the services provided herein. Notwithstanding the foregoing, the Company acknowledges that Finder has not made any guarantee with respect to identifying a Target or consummating any Transaction.

-8-

(Compl. Exh. A at PageID 16 (emphasis in the original).) Plaintiff does not allege ambiguity in its Complaint and TPP does not argue that any ambiguity exists. Therefore, the court will look only at the language of Sections 1 and 2 to determine the intent of the Parties and whether Plaintiff plausibly alleges breach. *Sunoco, Inc.*, 953 N.E.2d at 292.

Section 1 of the Finder Agreement establishes that TPP retained PMG on an "exclusive basis" to perform the services listed in Section 2. Thus, the court looks at Section 2 for the services PMG has the right to perform on an exclusive basis. Section 2 says that the "services to be performed by Finder shall consist of finding and identifying prospective purchasers or transaction partners (each, a "Target" and collectively, the Targets")." (Exh. A at PageID 16.) The Section also provides that "Finder shall have exclusive rights to identify Targets, and the Company shall not retain any other third-party to provide services similar to the services provided herein." (*Id.*) Thus, Section 2 appears to cabin Plaintiff's services as Finder to finding and identifying "Targets," and it prohibits TPP from retaining any other third-party to provide "similar services."

Plaintiff makes the following allegations regarding TPP's breach of Section 2 of the Finder Agreement:

> ¶ 35.  Upon information and belief, Griffin was working with TPP in May 2023 behind the scenes and caused Luciano to renege his verbal acceptance of the Revised Offer.

> ¶ 36.  On June 16, 2023, Luciano formally introduced Griffin to Kert via email. *See* June 2023 Correspondence, attached as Exhibit B.

> ¶ 37.  On June 19, 2023, Griffin stated that he was advising Luciano on tax, accounting, and legal issues, despite the Finder Agreement's provision making PMG the exclusive representative of TPP for a sale or transaction. *See id.*

(Compl. ¶¶ 35–37.) Even accepting these factual allegations as true, the court cannot draw a reasonable inference that when TPP involved Griffin, a third-party advising Luciano/TPP on business, tax, accounting and legal issues, it violated Section 2 of the Finder Agreement.

First, Plaintiff's Complaint frames the services PMG has exclusive rights to perform as "act[ing] on behalf of TPP in a potential sale or transaction." (Compl. ¶ 58.) This characterization of Plaintiff's services and the Parties' relationship goes beyond the plain language of Section 2, and therefore conflicts with the parties' contractual intent. Second, the Finder Agreement specifically prohibits TPP from retaining a third-party to provide "services similar" to PMG's work of "finding and identifying prospective purchase or transaction partners." (Exh. A at PageID 16.) While "similar services" could be construed broadly, Griffin is only ever described as "an advisor" to Luciano, and advising is a service quite distinct from "finding and identifying." Moreover, the Finder Agreement contemplates that an advisor, like Griffin, exists. Section 9 requires TPP to provide PMG with "access to the Company's officers, managers, directors and advisors." (*Id.* at PageID 18.) Thus, TPP involving Griffin as an advisor, and then introducing him to Plaintiff, is consistent with TPP being in compliance with the terms of the Finder Agreement, not in breach. Lastly, Plaintiff's argument in its Opposition Brief that the term "exclusive basis" is ambiguous, an assertion it did not make in its Complaint, fails because the Finder Agreement unambiguously connects "exclusive basis" to the services outlined in Section 2.

Plaintiff's second and third breach allegations relate to Section 9 of the Finder Agreement, and they read: "TPP has materially breached its obligations under the Finder Agreement by [...] refusing access to TPP's officers in violation of Section 9 of the Finder Agreement, and failing to cooperate and provide information concerning TPP that is reasonably appropriate for PMG also in

violation of Section 9 of the Finder Agreement." (Compl. ¶ 58.)

Section 9 of the Finder Agreement states in relevant part:

> The Company will provide Finder with all information concerning the Company which Finder reasonably deems appropriate in connection with its engagement and will provide Finder with access to the Company's officers, managers, directors and advisors.

(Exh. A at PageID 18.) In support of its claim that TPP breached Section 9, Plaintiff points to allegations in paragraphs 39 and 58 of the Complaint, as well as an email exchange marked as Exhibit B. (*See* Opp'n at PageID 170–71.) Paragraph 58, stated above, is best construed as a "legal conclusion couched as a factual allegation" because it simply reiterates the breach element of a contract claim. *Papasan*, 478 U.S. at 286. On its own, the court cannot reasonably infer that Plaintiff states a claim for breach of contract that is plausible on its face. Paragraph 39 of the Complaint does not alleviate this failure, because it charges Griffin, not Defendant TPP, with limiting Plaintiff's access to the people and information outlined in Section 9. Specifically, the allegation says, "Griffin redirected all of Kert's email requests for information to himself and refused PMG access to Luciano, despite Section 9 of the Finder Agreement that obligated TPP to 'provide [PMG] with access to [TPP's] officers, managers, directors, and advisors.'" (Compl. ¶ 39.) Nor does the email exchange attached to the Complaint as Exhibit B create an inference that TPP breached Section 9, on the contrary it shows TPP complied with the provision.

Exhibit B is an email exchange between Luciano, Darrin Kert, Director of PMG Business Services, and Griffin. (Exh. B at PageID 20.) The first email in the exchange is from Luciano on June 16, 2023, and its reads:

> Darrin - As you can clearly see from all of our interaction over the last two weeks, I am very willing to move closer to a deal with your

-11-

> proposed Buyer. Please send everything through my advisor, Jim
> Griffin, so that he can assist me with this decisions [sic] related to this
> process and ultimately making a final decision. I know that Jim is
> waiting for a call from you.

(*Id.* at PageID 23.) Later that day, Kert replies, asking Luciano for clarification on the relationship

between Luciano and Griffin:

> Tony, I could you clarify if Jim is working as you tax and accounting
> advisor or your legal representative/advisor regarding the purchase
> agreements and sale documents or even both? If he is only legal, I
> need your accounting people ready for a call Monday. It is <u>imperative</u>
> that we schedule a call for Monday with you and Orange Packaging
> to review and discuss deal structure and what would potentially be to
> your advantage, we cannot wait for this any longer. I will be calling
> Jim today as the call Monday **must occur** to preserve this deal as
> things have been drug out way too long. [sic].

(*Id.* at PageID 22 (emphasis in original).) Luciano quickly replies asking Kert to forward the email

to Jim, which Kert does, including the following message: "Jim, See below. We <u>must</u> have a call

with our client, Tony, and the accountants for the buyer on Monday and no later. Please confirm you

are the tax and accounting representative as well as the legal representative for Tony so that we can

get this scheduled." (*Id.* at PageID 21.)

The following Monday, June 19, 2023, Griffin replies to Kert, with Luciano copied, stating:

"Hi Darrin, Yes, I am advising Tony on business, tax, accounting and legal issues. I am available

today from 11am to 1:30pm; and at 3pm to 5pm. Please let me know when the Buyer is available."

(*Id.* at PageID 20.)

Viewing this email exchange and paragraph 39, the other factual allegation related to Section

9, in the light most favorable to Plaintiff, the court concludes that Plaintiff has not alleged facts

sufficient to support its breach of contract claim that TPP violated Section 9 of the Finder

Agreement. The above quoted exchange demonstrates that TPP *did* provide PMG access to its officers (Luciano as President) and to its advisors (Griffin as Luciano's business, tax, accounting, and legal advisor) as required by Section 9. Moreover, Plaintiff makes no factual allegations in its Complaint that TPP failed to provide PMG with reasonably appropriate information concerning the company as required by Section 9. Rather, PMG points to Griffin as the source of any Section 9 violations related to the withholding of information. (Compl. ¶ 40.)

Accordingly, the court concludes that Plaintiff has not sufficiently pled its Breach of Contract claim (Count I) to survive Defendant's Motion for Judgment on the Pleadings.

## B.    Count II - Breach of the Covenant of Good Faith and Fair Dealing

Defendant TPP argues Plaintiff's claim for breach of the covenant of good faith and fair dealing fails as a matter of law because Plaintiff's breach of contract claim subsumes it. (Mot. at PageID 130.) Plaintiff argues that it can maintain Count II as a separate claim because in Ohio, "'a breach of the covenant of good faith and fair dealing claim may be maintained as a separate action only where there is also a breach of contract claim.'" (Opp'n at PageID 172 (quoting *Eberhard v. Old Republic Nat'l Title Ins. Co.*, No. 1:11 CV 834, 2014 WL 12758386 (N.D. Ohio Feb. 19, 2014)).) Plaintiff bolsters this argument by citing to two other decisions by this court where it allowed for the plaintiff to maintain a breach of contract claim and a breach of the covenant of good faith and fair dealing claim. (*Id.* citing *Eberhard v. Old Republic Nat'l Title Ins. Co.*, No. 1:11 CV 834, 2014 WL 12758482 (N.D. Ohio May 22, 2014), *Barnes v. First Am. Title Ins. Co.*, No. 1:06 CV 574, 2006 WL 226553 (N.D. Ohio Aug. 8, 2006.).)

Defendant responds by explaining that the law on which Plaintiff relies is specific to the insurance industry, asserting that, "[i]t is well established that Ohio law only recognizes an implied

-13-

covenant of good faith and fair dealing in insurance contracts and in limited circumstances where the duty arises from the language of the contract." (Reply at PageID 212 (citing *Pappas v. Ippolito*, 895 N.E.2d 610, 622–23 (Ohio Ct. App. 2008).) Defendant continues that this narrow exception does not apply here because, "the current dispute has nothing to do with the insurance industry," and therefore Count II must fail. (*Id.*)

In Ohio, "parties to a contract are bound toward one another by standards of good faith and fair dealing. However, this does not stand for the proposition that breach of good faith exists as a separate claim. Instead, good faith is part of a contract claim and does not stand alone." *Dawson v. Blockbuster, Inc.*, No. 86451, 2006 WL 1061769 at *5 (Ohio Ct. App. Mar. 16, 2006) (citing *Wauseon Plaza Ltd. P'ship v. Wauseon Hardware Co.*, 807 N.E.2d 953 (Ohio Ct. App. 2004)). Federal courts in this Circuit applying Ohio law agree that breach of the covenant of good faith and fair dealing is not an independent cause of action. *See Am. Metal Stamping Co., LLC v. Pittsburgh Pipe & Supply Corp.*, No. 1:21CV2334, 2022 WL 19349958 (N.D. Ohio Oct. 14, 2022) (collecting cases).

Ohio law recognizes tort claims for violations of the duty of good faith in the insurance context. *Dawson v. Allstate Vehicle & Prop. Ins. Co.*, 709 F. Supp. 3d 444 (S.D. Ohio 2024) ("When an insurer acts in bad faith in relation to an insurance claim, its liability is not necessarily coterminous with the contract." (citing *Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315, 1320 (Ohio 1983)). But, as Defendant TPP notes, nothing in the instant case deals with insurance. Rather, Plaintiff appears to plead an independent cause of action to its breach of contract claim. Because Plaintiff's breach of contract claim (Count I) fails, Count II fails too because Ohio law does not recognize the implied covenant of good faith and fair dealing as an independent cause of action apart

-14-

from a valid breach of contract claim.

Even if Plaintiff's breach of contract claim survived, PMG has not established that TPP breached the implied covenant of good faith and fair dealing. In Ohio, good faith "is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 662 N.E.2d 1074, 1082 (Ohio 1996).

Here, Plaintiff alleges Defendant TPP breached the implied covenant of good faith and fair dealing, "by refusing to sell to either the First Target or Section Target through the Revised Offer, First LOI, or Section LOI," and by refusing "to cooperate with PMG and [...] to provide information and access to TPP's officers." (Compl. ¶¶ 64–65.) But TPP's "refusing to sell" is not a breach of good faith because the unambiguous terms of the Finder Agreement make clear that TPP was not obligated to sell, and that the Parties knew at the time of drafting that a transaction may never occur.

In addition to outlining the services Plaintiff has the exclusive right to perform for TPP, Section 2 states, "the Company acknowledges that Finder has not made any guarantee with respect to identifying a Target or consummating any Transaction." (Exh. A at PageID 16.) This provision indicates that when the parties entered the Finder Agreement, they knew a transaction between TPP and an identified Target may never occur, and that Plaintiff had no obligation to identify a Target that TPP would absolutely accept. Moreover, the unambiguous terms of Section 4 of the Finder Agreement shows that Plaintiff would receive the Finders Fee from Defendant TPP "at the closing of any transaction with any Target" identified by Plaintiff. (Exh. A at PageID 17.) This condition on Plaintiff's receipt of the Finders Fee is further illustrated in Section 4 when the Finder Agreement states, "[i]f earned, the Finders Fee will be paid at the closing of any Transaction..." (*Id.*) Thus, the

-15-

Agreement makes clear that TPP's obligation to pay PMG a Finders Fee is due when a transaction is closed, not when PMG presents a Target for TPP's consideration.

Because the unambiguous terms of the Finder Agreement show a mutual understanding that a Transaction may never happen, and if it did not, no Finders Fee was owed, TPP "refusing to sell" does not show bad faith, but rather an outcome contemplated by the parties when they executed the Finder Agreement.

Accordingly, the court grants Defendant's Motion for Judgment on the Pleadings on Plaintiff's Breach of the Covenant of Good Faith and Fair Dealing claim (Count II).

## C.      Count III - Promissory Estoppel

Defendant TPP argues that Plaintiff's Promissory Estoppel claim fails as a matter of law because the Finder Agreement is the complete agreement between the parties, and Plaintiff does not plausibly allege facts establishing detrimental reliance. (Mot. at PageID 131.) Plaintiff asserts the claim survives Defendant's Motion to Dismiss because it is based on promises made outside of the Finder Agreement, and the Complaint contains plausible allegations that PMG detrimentally relied on Luciano's oral promises. (Opp'n at PageID 173–74.) Defendant responds by reiterating that the Finder Agreement is the entire agreement between the parties, and Plaintiff cannot rely on communications outside the Agreement to support its promissory estoppel claim. (Reply at PageID 213.) The court agrees with Defendant TPP.

There are four elements to a claim for promissory estoppel under Ohio law: "(1) a clear, unambiguous promise; (2) reliance upon the promise by the person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the person claiming reliance is injured as a result of reliance on the promise." *Aero Fulfillment Servs. Corp. v. Oracle Corp.*, 186 F. Supp. 3d

764 (S.D. Ohio 2016) (quoting *Pappas v. Ippolito*, 895 N.E.2d 610, 622 (Ohio Ct. App. 2008)). A plaintiff can plead promissory estoppel as an alternative to a breach of contract claim. *Med. Mut. of Ohio v. AXA Assistance USA, Inc.*, No. 1:22-CV-1313, 2023 WL 6314579 at *11 (N.D. Ohio Sept. 28, 2023). However, where a valid, enforceable written agreement exists between the parties and it covers the same subject matter of the promissory estoppel claim, only the breach of contract claim survives. *See Kashif v. Cent. State Univ.*, 729 N.E.2d 787, 791 (Ohio Ct. App. 1999) (collecting cases that hold promissory estoppel claim cannot exist when there is an express written agreement on the same subject matter)).

Here, neither party argues that the Finder Agreement is not a valid, enforceable agreement. Moreover, Plaintiff does not plead promissory estoppel as an alternative to its breach of contract claim. Plaintiff asserts instead that the communications between it and Luciano on behalf of TPP fall outside the Finder Agreement. (Opp'n at PageID 174; Compl. ¶¶ 70–73.) These communications allegedly included promises by Luciano on behalf of TPP to "pay a Finder's Fee in no less than $200,000 in exchange for a buyer of TPP at the price of $3,500,000 [and] sell TPP's used equipment to PMG for $500,000 as part of the Revised Offer." (Compl. ¶¶ 70, 73.)

Looking first at Luciano's oral promise to pay a Finder's Fee of $200,000 or more if Plaintiff found a Target willing to pay $3,500,000 or more for TPP, this alleged oral promise concerns the same subject matter as Section 4 of the Finder Agreement. Section 4 of the Finder Agreement outlines when and how TPP, the Company, will pay PMG, the Finder. The Section states in relevant part that:

> At the closing of any transaction with any Target (including any affiliate or subsidiary of Target) identified by Finder (a "Transaction"), Company will pay Finder a fee based upon the total

> sale price or, in the case of a long term supply agreement, licensing, joint venture or other agreement, the aggregate value of such agreement paid in completing a Transaction with a Target first identified in writing by Finder [...] The amount of the fee payable by Company or its affiliate to Finder will be computed as a percentage of the "Transaction Value" [and] In no event shall the success fee be less than $200,000.00.

(Exh. A at PageID 17.) Although Section 4 does not specify Luciano's alleged price point of $3,500,000, it does unambiguously show that any Finder Fee will be $200,000 or more and payable "[a]t the closing of any transaction with any Target," meaning that if there is no closing, the relevant Finder Fee is not due. (*Id.*) Thus, the court concludes that Luciano's first alleged oral promise regarding payment of the Finder Fee concerns the same subject matter in the Finder Agreement.

Luciano's second alleged promise to Plaintiff on behalf of TPP is to "sell TPP's used equipment to PMG for $500,000 as part of the Revised Offer." (Compl. ¶ 73.) This alleged promise is not covered by the Fee Schedule, nor does it appear in any other part of the Finder Agreement. However, the promise relates to a "Revised Offer" from the first Target PMG identified that Luciano allegedly accepted verbally, but then reneged on. (Compl. ¶¶ 32–33.) Thus, it does concern the same subject matter of the Finder Agreement because it pertains to PMG's work of identifying a Target buyer for TPP.

Additionally, the Finder Agreement appears to be fully integrated given the parties' inclusion of an integration clause and neither party argues that the Finder Agreement is incomplete or an ambiguous statement of their contractual intent. In Ohio, "[a] contract that appears to be a complete and unambiguous statement of the parties' contractual intent is presumed to be an integrated writing." *Bellman v. Am. Internatl. Grp.*, 865 N.E.2d 853, 857 (Ohio 2007) (citing *Galmish v. Cicchini*, 734 N.E.2d 782 (Ohio 2000)). When a contract is integrated, "the parties' final written

integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements." *Galmish*, 734 N.E.2d at 788 (quoting 11 Williston on Contracts (4 Ed. 1999) 569–570, § 33:4)). No where in its Complaint does Plaintiff allege that the Finder Agreement is ambiguous or incomplete, nor does Plaintiff challenge the validity of the integration clause found in Section 13 of the Agreement.[2] Plaintiff does indicate in its Opposition Brief that the terms "exclusive basis" and "access" as used in Section 2 and Section 9 of the Finder Agreement are ambiguous, but it does so as a legal argument for why a motion for judgment on the pleadings is not the time to dispute the terms. (*See* Opp'n at PageID 169–70.) But these conclusory legal arguments can not serve as a substitute for Plaintiff's failure to allege contractual ambiguity in its Complaint. Accordingly, the court concludes that the Finder Agreement is fully integrated and the allegations of oral promises made outside of it are not allowed to alter the Agreement.

Therefore, Defendant's Motion for Judgment on the Pleadings on Plaintiff's Promissory Estoppel claim (Count III) is granted.

**D.      Count V - Civil Conspiracy**

Defendant TPP argues Plaintiff does not state a cognizable civil conspiracy claim against TPP because there is no underlying tort claim, and even if there was an underlying tort claim, Plaintiff did not plead its conspiracy claim with the necessary specificity. (Mot. at PageID 133–34.) Plaintiff seeks to rebut Defendant's arguments by asserting it satisfies the pleading requirement

---

[2]      Section 13 reads, in relevant part, "[t]his Agreement constitutes the entire agreement between the parties, superseding all prior oral or written agreements, understanding, representation and warranties, and courses of conduct and dealing among the parties relating to the subject matter hereof. This agreement may be amended or modified by a writing executed by all parties hereto." (Compl. Exh. A at PageID 19.)

-19-

because its Complaint alleges "several examples of TPP and Griffin's actions to conspire to breach the Finder Agreement and Griffin's tortious interference thereto, both underlying unlawful acts." (Opp'n at PageID 176.) Defendant responds by reiterating that Plaintiff can only maintain a civil conspiracy claim against TPP by pleading an independent tort against TPP and not relying on the alleged tortious conduct of Griffin. (Reply at PageID 213.) Moreover, Defendant TPP argues that under Ohio law, "a party cannot conspire to breach an agreement to which they are a party." (*Id.* (citing *Strama v. Allstate Ins. Co.*, 7th Dist. Belmont No. 14 BE 8, 2015-Ohio-2590, ¶ 37).) Defendant's argument is well-taken.

Under Ohio law, civil conspiracy consists of four elements: (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy. *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 629 N.E.2d 28 (Ohio Ct. App. 1993) (citing *Minarik v. Nagy*, 193 N.E.2d 280 (Ohio Ct App 1963)). The malice involved in the tort "is that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another." *Fed. Ins. Co. v. Webne*, 513 F. Supp. 2d 921, 927 (N.D. Ohio 2007) (quoting *Pickle v. Swinehart*, 166 N.E.2d 227 (Ohio 1960)).

Here, Plaintiff only pleads breach of contract as the underlying unlawful act for its civil conspiracy claim, stating:

> ¶ 89.   TPP and Griffin unlawfully conspired to breach the Finder Agreement by, *inter alia*, violating PMG's rights as TPP's exclusive representative, delaying the production of relevant information related to TPP, refusing access to TPP's President, Luciano, and not paying a Finder's Fee.
>
> ¶ 90.   The actions taken by TPP and Griffin exist independent from the actual conspiracy because Defendants conspired to breach

the Finder Agreement.

(Compl. ¶¶ 89–90.) In its Opposition Brief, Plaintiff also argues that its tortious interference claim (Count IV) against Griffin constitutes an underlying unlawful act supporting its civil conspiracy claim. (Opp'n at PageID 176.) Plaintiff's civil conspiracy claim fails under either alleged unlawful act.

In *Wagoner v. Leach Co.*, No. l 17589, 1999 WL 961166, at *20 (Ohio Ct. App. 1999), the state appellate court held that "a party cannot be held liable for conspiring to breach his own contract." *Id.* at *20 (citing *Schell v. Kaiser-Frazer Sales Corp.*, 274 N.E.2d 315 (Ohio Ct. App. 1971)). The *Wagoner* court continued that "allowing a plaintiff seeking damages for breach of contract to demand tort damages (including possibly punitive damages), undermines the efficiency and stability of an economic system based on contract [...]" *Id.* Accordingly, because TPP is a party to the Finder Agreement and thus cannot be held liable for conspiring to breach it, Plaintiff cannot show that two or more persons conspired to breach the Finder Agreement.

Plaintiff's tortious interference claim also fails under Ohio law. The *Wagoner* court explained that while a cause of action exists for conspiracy to tortuously interfere with a contractual relationship, "the claim, however, must involve two or more nonparties conspiring to induce a party to breach his contract. It makes no sense to say that a party conspired to induce himself to breach a contract." *Id.* at *19. Thus, because Plaintiff's tortious interference argument involves a party to the contract, TPP, and only one non-party, Griffin, its civil conspiracy claim cannot rest on its tortious interference claim.

Therefore, the court hereby grants Defendant's Motion for Judgment on the Pleadings in respect to Plaintiff's civil conspiracy claim (Count V).

-21-

## IV. CONCLUSION

The court hereby grants Defendant TPP's Motion for Judgment on the Pleadings (ECF No.

19) in respect to all counts brought by Plaintiff against it.  Consequently, the court denies TPP's

counterclaim for Declaratory Judgment as moot. (*See* TPP's Ans. and Counterclaim at PageID 68,

ECF No. 8.) Plaintiff's claims against Griffin will be addressed by separate order.

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

February 28, 2025

-22-